Thomas C. Chimera, J.
Defendant seeks an order dismissing an amended complaint for insufficiency on the heels of a successful similar motion addressed to the original pleading. Plaintiff was given leave to serve an amended complaint (30 Misc 2d 886, affd. 15 A D 2d 650). The two pleadings differ, in the final analysis, only in respect to theory — the facts remaining substantially unchanged. The theory of the original complaint is illusive and I shall not attempt to characterize it except to say that the learned Justice then having the matter under consideration appears to have based his decision that that pleading was insufficient on a finding of no privity between the parties to the action.
The theory of the new complaint is clear — this is an action in tort for damages for inducing a breach of contract between plaintiff and one Schimpf.
The complaint alleges that at the time plaintiff took and recorded his second mortgage, defendant’s first mortgage was reduced to the sum of $18,500, and that plaintiff’s second mortgage recited among other clauses the following: ‘ ‘ This mortgage is subject and subordinate to a mortgage presently held by the Kings County Savings Bank in the reduced sum of approximately $18,500.00 with appropriate interest, to any extensions thereof and to any mortgage or consolidated mortgage which may be placed on the premises in lieu thereof and to extensions thereof provided a) the interest rate thereof shall not be greater than 6% per annum and b) that if the principal amount thereof shall exceed amount of principal owing and unpaid on said existing mortgage at the time of placing such new mortgage, or consolidated mortgage, the excess to be paid to the holder of *364 this mortgage in reduction of the principal thereof which shall not effect or alter the regular installments of principal payable thereunder, and the holder of this mortgage shall on demand and without charge, execute, acknowledge and deliver any agreements to effectuate such subordination.”
The complaint goes on to allege that thereafter a fire occurred at the subject premises; the total amount of the said fire loss was $8,622.50 and that “ under and pursuant to the terms of the fire insurance policies then existing on said premises, and pursuant to the first mortgage lien * * * and over the objections of said William J. Schimpf, the defendant retained the proceeds of the said fire loss * * * in reduction of the then unpaid principal balance due and owing on the said first mortgage lien”; that Schimpf “ objected ” to this procedure, representing to defendant bank ‘2 that he required those proceeds to repair the damaged mortgaged premises”; that defendant offered to “ loan said proceeds to Schimpf secured by a consolidated first mortgage at a higher rate of interest ’ ’; that Schimpf advised defendant of the existence of the subordination agreement in plaintiff’s second mortgage (supra), advising defendant ‘ ‘ that if the funds were so received, he could not retain them for said repairs, since he would be obliged under the provisions set forth to pay those funds to plaintiff ”; that at the “ insistence ” of defendant bank and upon its assurance that plaintiff was not entitled to receive anything under this arrangement, represented by defendant bank to be a 11 paper transaction” and not a loan, Schimpf was induced to accept a “ further loan ” from defendant bank in the sum of $8,872.50 secured by a consolidated first mortgage at a higher rate of interest, accompanied by an extension and modification agreement, providing among other clauses: As to the mortgage — ‘ ‘ fourteenth : That the lien of this mortgage and the lien of mortgage and the lien of mortgage made by William J. Schimpf to The Kings County Savings Bank, recorded in the Office of the Register of the City of New York for the County of Kings in Liber 10265 mp. 381; and mortgage made by William J. Schimpf to the Kings County Savings Bank, recorded in said Register’s Office in Liber 11555 mp. 520, which last two mentioned mortgages were consolidated to constitute a single lien by terms of the last mentioned mortgage, and upon which mortgages, as consolidated, there is unpaid the principal sum of nine thousand three hundred seventy-seven and 50/100 ($9,377.50 dollars) ; together with the bonds accompanying the same, be, and the same hereby are coordinated and consolidated to constitute a single lien in the sum of EIGHTEEN THOUSAND TWO HUNDRED EIETY ($18,250.00 DOLLARS) ”. *365 As to the extension and modification agreement — “ witnesseth, that the party of the first part, holder of a certain bond made by the party of the second part, to the party of the first part dated December 8th, 1950, secured by a mortgage bearing even date therewith, and recorded in the office of the Register of the City of New York for the County of Kings on December 11,1950 in Liber 10265 Section 7 of Mortgages, page 381; and a certain bond made by the party of the second part to the party of the first part, dated July 30, 1958, secured by a mortgage bearing even date therewith, and recorded in said Register’s Office on July 31, 1958 in Liber 11555, page 520; which two mortgages were, by the terms of the last mentioned mortgage, consolidated to constitute a single lien; and a certain bond made by the party of the second part to the party of the first part, bearing even date herewith, secured by a mortgage bearing even date therewith, and intended to be recorded in said Register’s Office; all of which mortgages were, by the terms of the last mentioned mortgage, consolidated to constitute a single lien (which bonds are herein referred to as ‘ bond
Plaintiff pleads that all of this was accomplished over his expressed protest and without his consent, oral or written, and that by reason of the foregoing Schimpf was induced by defendant to breach the said mortgage agreement to plaintiff’s damage in the sum of $8,872.50.
Both sides seem to think that the solution to the court’s problem on this motion depends on a finding of privity, or lack of it, between plaintiff and defendant. I think privity has nothing to do with it. In any event, I do not reach that question.
Nor is it necessary finally to decide at this time what the measure of plaintiff’s “ grief ” is or against whom his “ tears ” must be levelled, because, assuming but not deciding that this situation adds up to a new loan — as the late lamented Mr. Justice Epstein ruled, “he [plaintiff] could proceed against the mortgagor upon a default or he may claim against the defendant or defend the position if he deems it correct that at least in part defendant’s mortgage is subordinate to plaintiff’s mortgage.” (30 Misc 2d 886, 888.)
The problem before this court is simply to decide whether the facts alleged in this complaint fall within the ambit of the tort of inducing the breach of a contract, presenting an exercise in pure reasoning.
Here again, it will not be necessary to decide whether the subordination clause in question is the classic type of contract heretofore considered by the courts in actions for damages for inducing a breach of contract, for, assuming that it is, on the *366 state of these facts, plaintiff cannot possibly succeed against this defendant.
A person is said to be liable in damages for inducing its breach, if, having no privilege to do so, he induces, or otherwise purposely causes, a third person not to perform a contract with another to the harm of the last. The elements of the tort are unjustified interference, predatory intent and damage. (4 Restatement, Torts, § 766.)
However one may characterize defendant’s activity, it cannot be called an ‘ ‘ interference ’ ’. And even if it were an interference— it could hardly be regarded as “ unjustified ”. Moreover, I look in vain for the slightest taint of predatory intent on defendant’s part. Finally, in my opinion, plaintiff was not damaged at all by anything that defendant is said to have done.

The underlying purpose of the subordination clause in plaintiff’s second mortgage was to insure to plaintiff the benefit of any future actual reduction in the first mortgage loan so as to enhance the collateral security of his second mortgage loan, and, at the same time, prevent the mortgagor from increasing his total mortgage burden “at the top”, at the expense of a corresponding reduction in plaintiff’s collateral security “ underneath ”.

Viewed in this light, there was no actual reduction in the first mortgage loan, and, therefore, no enhancement of the collateral security of the second mortgage; there was no increase in Schimpf’s total mortgage burden “ at the top ” and, therefore, no reduction of plaintiff’s collateral security “ underneath ” at all. At the very least, all interested parties were restored to the same position obtaining before the fire loss to the mortgaged premises occurred!
Indeed, the intriguing question raised by the remarks of Mr. Justice Epstein, quoted above, may well have the effect of enhancing plaintiff’s second mortgage collateral security, if and when the question of “priorities” as between the first and second mortgage, is properly litigated.
Accordingly, the motion is granted and the complaint is dismissed.